

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

JPL:ADG/RMP                                   *271 Cadman Plaza East*
F. #2019R01270                                *Brooklyn, New York 11201*

August 17, 2022

By ECF

The Honorable Edward R. Korman
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

       Re:    United States v. Henrick Foster
              Criminal Docket No. 19-478 (ERK)

Dear Judge Korman:

       The government respectfully submits this letter in advance of the sentencing of the defendant Henrick Foster, which is scheduled for August 24, 2022, at 2:30 p.m.  On July 6, 2021, the defendant pled guilty, before Chief United States Magistrate Judge Cheryl L. Pollak, pursuant to a plea agreement (the "Plea Agreement"), to one count of conspiring to distribute 500 grams or more of cocaine, contrary to Title 21, United States Code, Section 841(a)(1), in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(B)(ii)(II).  See Presentence Investigation Report, prepared June 15, 2022 ("PSR") ¶ 1.[1]  For the reasons set forth below, the government respectfully requests that the Court impose a sentence of 60 months' custody, which is the statutory mandatory minimum sentence and effective United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") term.  See Plea Agr. ¶¶ 1-2.[2]

I.      Background

       In July 2019, Homeland Security Investigations ("HSI") was investigating the defendant and his co-defendant Jamal Washington for transporting large amounts of cocaine from California to New York by commercial flight.  PSR ¶ 3.  On July 14, 2019, the defendant

---

[1] The government respectfully requests that the Court accept the defendant's plea of guilty.

[2] As set forth in greater detail below, the PSR incorrectly provides that the defendant is "safety valve" eligible.  Because he is not safety valve eligible, the defendant is subject to the 60-month mandatory minimum.

contacted an individual, who was a cooperating witness (the "CW") with the government, seeking the CW's assistance with transporting one to two kilograms of cocaine from California to New York. PSR ¶ 4. The defendant offered to provide more cocaine if the CW could invest additional funds. PSR ¶ 4. Under the direction of law enforcement authorities, the CW agreed to help transport the cocaine. PSR ¶ 4. On the same date, the defendant took a flight from John F. Kennedy International Airport ("JFK") in Queens, New York, to Los Angeles, California, to meet with Washington about the cocaine transaction. PSR ¶ 4.

On August 18, 2019, the defendant contacted the CW to advise him that he was traveling back to California and requested a meeting to arrange the narcotics deal. PSR ¶ 5. The following day, the defendant informed the CW that Washington had the cocaine in his possession. PSR ¶ 5. Later that month, the defendant contacted the CW to inform him that Washington had sold the cocaine to another individual because the defendant took too long to arrange for the transportation of the drugs. PSR ¶ 7.

On September 11, 2019, the CW suggested to the defendants Foster and Washington that Washington meet with the CW's cousin, who was actually an HSI undercover agent (the "UC"). PSR ¶ 8. The parties agreed that, for a $1,000 payment, the "cousin" would retrieve the cocaine shipment from Washington and transport it from California to New York by commercial flight. PSR ¶¶ 8-9.

On September 18, 2019, Washington met the UC in a parking lot in Long Beach, California, and gave the UC a bag, which contained a brick of cocaine weighing approximately one kilogram. PSR ¶¶ 10-11. The defendant then agreed to meet the UC at JFK so the defendant could retrieve his narcotics. PSR ¶ 10. On September 22, 2019, the defendants Foster and Washington met the UC at JFK, during which meeting the UC provided the cocaine to the defendants. PSR ¶ 11. Once the defendants accepted the package, HSI agents arrested both defendants. PSR ¶ 11.

On October 17, 2019, a grand jury sitting in the Eastern District of New York returned a two count indictment charging the defendants with conspiring to distribute 500 grams or more of cocaine, contrary to 21 U.S.C. § 841(a)(1), in violation of 18 U.S.C. §§ 846 and 841(b)(1)(B)(ii)(II); and distributing 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(ii)(II).

II.    The PSR

On June 16, 2022, the government submitted written objections to the PSR. Specifically, as to paragraphs 18, 26, 62, 63 and 64, the government objected:

> [T]he defendant is <u>not</u> "safety value" eligible. Specifically, the defendant has not provided a complete and truthful statement regarding his involvement in the instant offense or offenses that were part of the same course of conduct or of a common scheme or plan. Therefore, he has not satisfied all the factors of U.S.S.G. § 5C1.2(a) and/or 18 U.S.C. § 3553(f) and is subject to the statutory minimum 60-month sentence and 4-year minimum term

of supervised release.  Relatedly, because the two-point reduction pursuant to U.S.S.G. § 2D1.1(b)(18) does not apply, the relevant adjusted offense level under the Guidelines is 21, which, in light of the statutory mandatory minimum sentence, provides for a Guidelines sentence of 60 months.  The government also notes that this Guidelines calculation is consistent with the calculation set forth in the plea agreement, to which the defendant stipulated, (see Plea Agreement ¶ 2).

The government understands that the Probation Department intends to issue an Addendum to the PSR in advance of sentencing that agrees with the government's objections. However, because that Addendum has yet to be issued, the government reiterates that objection here.

The government also made one additional and comparatively minor factual objection to the PSR.  The defendant has not submitted objections to the PSR.

III.    Guidelines Calculations

The government respectfully submits that the Court should adopt the Guidelines calculations contained within the Plea Agreement and, which the government understands, will be adopted by an Amended PSR prior to sentencing.  The Plea Agreement's Guidelines calculations, to which the parties stipulated, are as follows:

| | |
|---|---|
| Base Offense Level (§ 2D1.1(a)(5), § 2D1.1(c)(8)) | 24 |
| Less:  Acceptance of Responsibility (§ 3E1.1(a)-(b)) | -3 |
| Total: | 21 |

Plea Agr. ¶ 2.  Accordingly, the total adjusted offense level is 21.  The defendant falls within Criminal History Category I, which results in a Guidelines range of 37 to 46 months' imprisonment.  However, because the statutory minimum penalty is 60 months, the effective Guidelines term is 60 months of imprisonment.  Plea Agr. ¶ 2; see also U.S.S.G. § 5G1.1(b); 21 U.S.C. § 841(b)(1)(B)(ii)(II) (providing a minimum term of imprisonment of five years).

IV.     The Appropriate Sentence

A.    Legal Standard

A "district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.  As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."  Gall v. United States, 552 U.S. 38, 49 (2007) (citation omitted).  Where a statutorily required minimum sentence is greater than the maximum of the applicable Guidelines range, the statutorily required minimum sentence shall be the Guidelines sentence.  U.S.S.G. § 5G1.1(b).  Additionally, a "statutory mandatory minimum binds a sentencing court by explicitly providing a sentencing floor."  United States v. Carter, 696 F.3d 229, 230 (2d Cir. 2012).  In light of the defendant's

conviction on Count One, the operative mandatory term of imprisonment in this case is five years.  21 U.S.C. § 841(b)(1)(B)(ii)(II).

Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party.  In so doing, [it] may not presume that the Guidelines range is reasonable.  [It] must make an individualized assessment based on the facts presented."  Id. at 50 (citation and footnote omitted).

Title 18, United States Code, Section 3553(a) provides that, in imposing a sentence, a court shall consider:

    (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2)    the need for the sentence imposed—

        (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

        (B)    to afford adequate deterrence to criminal conduct; [and]

        (C)    to protect the public from further crimes of the defendant.

At sentencing, "the court is virtually unfettered with respect to the information it may consider."  United States v. Alexander, 860 F.2d 508, 513 (2d Cir. 1988).  Indeed, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."  18 U.S.C. § 3661.  Thus, the Court should first calculate the applicable Guidelines range, and then apply the Section 3553(a) factors to arrive at an appropriate sentence, considering all relevant facts.

B.  Section 3553(a) Factors

The Section 3553(a) factors warrant the effective Guidelines sentence of 60 months in this case.  Here, the defendant and his co-defendant devised and executed a cross-country narcotics trafficking scheme and deliberately sought to use commercial airlines to transport a large, distribution-quantity of a dangerous narcotic for financial gain.  Notably, the defendant was employed as a commercial airline baggage handler at JFK for approximately nine years, which strongly suggests that he possessed the knowledge and experience necessary to circumvent airport security protocols in furtherance of his criminal objectives.  PSR ¶ 54.  The quantity of cocaine the defendants sought was apparently limited only by their ability to secure cash to buy it.

Furthermore, the government respectfully submits that the effective Guidelines sentence of 60 months will adequately punish the defendant for his crime and deter would-be narcotics smugglers from flooding New York's streets with illegal drugs.  Individuals inclined to traffic in narcotics should understand that doing so will result in serious consequences.  In

summary, a Guidelines sentence would be sufficient but not greater than necessary to achieve the goals of sentencing.

V.      Conclusion

For the foregoing reasons, the government respectfully requests that the Court impose the mandatory minimum sentence of 60 months' imprisonment.

Respectfully submitted,

BREON PEACE
United States Attorney

By:     /s/ Jonathan P. Lax
Jonathan P. Lax
Robert Pollack
Andrew D. Grubin
Assistant U.S. Attorneys
(718) 254-7000

cc:     Clerk of the Court (ERK) (by E-mail and ECF)
Donald Duboulay, Esq. (by E-mail and ECF)
U.S. Probation Officer Jennifer Baumann (by E-mail)